STATE of Minnesota, Respondent,

v.

Marvin ERICKSON, Appellant.

No. C2-86-806.

Court of Appeals of Minnesota.

Nov. 18, 1986.

Review Denied Dec. 12, 1986.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Mark Thomason, Hubbard Co. Atty., Park Rapids, for respondent.

C. Paul Jones, Public Defender, Kathy King, Mark F. Anderson, Asst. Public Defenders, Minneapolis, for appellant.

Considered and decided by WOZNIAK, P.J., and NIERENGARTEN, and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Marvin Erickson was convicted of second degree criminal sexual conduct under Minn. Stat. § 609.343, subd. 1 (Supp.1985). On appeal he contends that identification evidence was inadmissible because it followed impermissibly suggestive procedures. He also claims that evidence was insufficient to sustain the jury verdict, and that he was denied effective assistance of counsel. We affirm.

## FACTS

At about 3:00 p.m. on June 30, 1985, 19 year-old L.J. was walking along Highway 34 east of Park Rapids. She intended to hitchhike to her home in Nevis. A man driving a dark green Duster stopped and offered her a ride. After L.J. got into the car, the man touched her breast three times. She moved his hand away and told him to "quit it." When the man asked L.J. if she wanted to make some money, she told him to pull over and let her out. He turned onto a dirt road and stopped. L.J. jumped out, but the man, still holding on to her shirt, followed her and they wrestled into a ditch. The man touched L.J.'s breast again, grabbed her hair, pounded her head on the ground, hit her with his hand, and threatened to hit her in the face with a pop bottle.[1]

L.J. escaped when another car drove by, ran back to the main road, got a ride home, and called police. She gave Hubbard County Deputy Sheriff Jerry Tatro the following description of her assailant:

blond, bald, wire rim glasses, brown tint, two hearing aids and a long neck with his adam's apple stuck out. He had a scratch on his cheek and a hickey on his neck.

Tatro sent this description out over the teletype and obtained appellant's name and three different pictures. He compiled a

---

1. A pop bottle found in the ditch by police was admitted into evidence. The fingerprints on the bottle were smudged.

line-up of 12 photographs: three of appellant and nine of other individuals. Tatro spread the three pictures of appellant throughout a pile of 12 photographs: one at the bottom, one in the middle, and one about a third of the way from the top. Appellant was the only person depicted more than once.

When Tatro showed the line-up to L.J. on July 7, 1985, she immediately identified the first picture of appellant:

The most recent picture of the defendant I had approximately four pictures down in the line-up, and as soon as she got to that one, she picked it out as being her assailant.

L.J. continued through the line-up and picked out all three pictures of appellant. She did not pick any other photographs.

On the basis of her identification, appellant was arrested and charged with fourth degree criminal sexual conduct. At an omnibus hearing September 9, 1985, he moved to suppress L.J.'s identification. The trial court found the men pictured in the line-up were somewhat similar in appearance, three of the pictures were of appellant, and L.J. identified all the pictures of appellant. The trial court denied the motion to suppress, and stated in a memorandum that:

The procedure used herein could be considered suggestive wherein three pictures of the defendant were spread throughout the 12 total pictures used. In this case, however, there was no question about the identity of the assailant by the victim where she has picked out all three pictures of defendant. The court would suggest that this method of photo identification should not be used in the future.

On January 14, 1986, appellant pleaded guilty to attempted fourth degree criminal sexual conduct pursuant to a plea agreement. The State agreed to recommend a

presumptive sentence of 22 months. The trial court accepted the guilty plea and ordered a pre-sentence investigation (PSI).

At a sentencing hearing on March 10, 1986, appellant withdrew his guilty plea when he learned that the PSI recommended a mandatory minimum sentence of 36 months [2] instead of 22 months. Defense counsel overlooked the mandatory minimum sentencing statute, and had anticipated that the trial court would accept the prosecutor's recommendation for a 22 month sentence. Even though the PSI recommended a 36 month sentence, defense counsel advised appellant not to withdraw his guilty plea and stated on the record:

He is doing so, Your Honor, against my advice, and doing so with the knowledge that [the prosecutor] will be seeking to amend the complaint to include a charge of criminal sexual conduct in the second degree.

Appellant was tried on an amended complaint, which added two counts of second degree criminal sexual conduct, Minn.Stat. § 609.343, subd. 1(d) and (e) (Supp.1985). Based on testimony from L.J. and Tatro, the jury found appellant guilty of both second and fourth degree criminal sexual conduct. The trial court imposed the presumptive sentence of imprisonment for 81 months on the second degree criminal sexual conduct conviction.

## ISSUES

1. Was L.J.'s identification the product of procedures so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification?

2. Was the evidence sufficient to support the verdict?

3. Was appellant denied effective assistance of counsel?

---

**2.** The PSI was incorrect. Minn.Stat. § 609.346, subd. 2 (1984) provides that when a person is convicted of certain sex-related offenses within 15 years of a prior conviction, the sentence for the second offense is "imprisonment for a term of not less than three years, nor more than the maximum sentence provided by law * * *." *Id.*

The maximum sentence for attempted fourth degree criminal sexual conduct is 30 months. *See* Minn.Stat. §§ 609.17, subd. 4(2) and 609.-345, subd. 2 (1984). Thus, appellant was facing a sentence of 30 months rather than the 22 months stated in the plea agreement.

## ANALYSIS

### I.

*Photographic Line-ups*

Admission of identification evidence based on suggestive identification procedures violates a defendant's right to due process. *See Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). Each case must be decided upon the totality of the circumstances, and a conviction will be reversed only if the identification procedures were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Id.* at 196–197 (citing *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)). Five factors are relevant in evaluating the likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the scene of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *See Neil,* 409 U.S. at 199, 93 S.Ct. at 382.

■ Here the line-up consisted of twelve photographs, three of which were of appellant. We agree with the trial court and with appellant that this procedure was unduly suggestive. *See e.g. State v. Lindahl,* 309 N.W.2d 763 (Minn.1981) (line-up with two pictures of the defendant, two of another person, and one each of the rest); *State v. Brouillette,* 286 N.W.2d 702 (Minn. 1979) (defendant's picture was the only color photograph and appeared twice). The State has not presented any legitimate purpose for the inclusion of multiple pictures of a suspect in a line-up. Such a procedure is improper, and, under certain circumstances, may constitute reversible error.

■ However, our disapproval of this line-up procedure does not mandate reversal of appellant's conviction. L.J. was in close proximity to her assailant both before and during the assault, which occurred on a summer afternoon. She had a close-up op-portunity in good lighting to view her attacker and gave police a detailed description. She viewed the line-up one week later and immediately picked the first picture of appellant, picked out all three pictures of him, and did not pick any other photographs. We conclude that, given the totality of these circumstances, the suggestive line-up was not reversible error as it did not give rise to a substantial likelihood of irreparable misidentification. *See Neil,* 409 U.S. at 196–97, 93 S.Ct. at 380–81; *see also Lindahl,* 309 N.W.2d at 765.

### II.

*Sufficiency of the Evidence*

■ Appellant contends that the evidence was insufficient to support the guilty verdict. We disagree. For purposes of appellate review, we assume the jury believed L.J.'s testimony that appellant repeatedly grabbed her breast, pounded her head on the ground, struck her in the face, and threatened to hit her in the face with a bottle. *See State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978). Corroboration of L.J.'s identification of appellant as her assailant was not required. *See* Minn.Stat. § 609.347, subd. 1 (1984); *see also State v. Blegen,* 387 N.W.2d 459, 463–64 (Minn.Ct. App.1986) *pet. for rev. denied* (Minn. July 31, 1986). The evidence supports the jury's determination that appellant committed the offense charged. *See* Minn.Stat. § 609.343, subd. 1(d) and (e) (Supp.1985).

### III.

*Effectiveness of Counsel*

Under the sixth amendment, a criminal defendant is entitled to reasonably effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To prevail on a sixth amendment claim, a defendant must show his counsel's representation fell below an objective standard of reasonableness and

so undermined the proper functioning of the adversarial process that the trial can-

not be relied on as having produced a just result.

*Id.* at 686–88, 104 S.Ct. at 2064–65.

 Appellant contends he was denied effective assistance of counsel because he withdrew a negotiated guilty plea based on defense counsel's mistake as to his probable sentence. Under the plea agreement, appellant pleaded guilty to attempted fourth degree criminal sexual conduct, and the State agreed to recommend a 22 month sentence. The PSI subsequently recommended a sentence of 36 months, but the statutory sentence was actually 30 months. Counsel apparently relied on the PSI and informed appellant that his probable sentence was 36 months. Upon learning that he would not get the 22 month sentence he contemplated, appellant decided to withdraw his guilty plea and take his chances at trial. He now argues that he would not have withdrawn his guilty plea and gone to trial if he had known that his sentence would only have been 30 months, and asks this court to reduce his sentence from 81 to 30 months.

Defense counsel should closely scrutinize facts and recommendations in pre-sentence investigations. In this case, counsel did not independently determine the effect of a mandatory minimum sentencing statute on appellant's sentence. However, counsel strongly advised appellant *not* to withdraw his guilty plea because of the significantly greater sentence that would be imposed if he went to trial and was convicted of second degree criminal sexual conduct. While counsel should not have relied on the accuracy of the PSI without doing independent research, appellant disregarded sound legal advice.

Further, the record contains no factual support for appellant's assertion that he would not have withdrawn his plea had he been told that his sentence would be 30 months rather than 36 months. We have stated that claims of ineffective assistance of counsel are best brought by a petition for post-conviction relief, so that a proper and complete record can be made of the interaction between attorney and client.

*See State v. Hanson,* 366 N.W.2d 377 (Minn.Ct.App.1985).

We find that appellant has not sustained his burden of showing that an unjust result was reached. *See Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

## DECISION

The use of suggestive identification procedures did not create a substantial likelihood of misidentification. Evidence was sufficient to support the jury's verdict. Appellant was not denied effective assistance of counsel.

Affirmed.