**STATE of Minnesota, Respondent,**

v.

**Keith Allen HOOKS, Appellant.**

**No. A07–0597.**

Court of Appeals of Minnesota.

July 1, 2008.

Lori Swanson, Attorney General, Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, St. Paul, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Marie Wolf, Assistant

Public Defender, St. Paul, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; CONNOLLY, Judge; and HARTEN, Judge.[*]

## OPINION

ROSS, Judge.

Keith Hooks appeals his conviction of third-degree controlled substance crime. Hooks sold cocaine from his car to an undercover police officer who later identified Hooks as the seller by obtaining and viewing Hooks's driver's license photograph from the Department of Motor Vehicles electronic database. Hooks contends on appeal that the district court violated his constitutional right to due process by failing to suppress evidence of the identification, arguing that the identification procedure was tantamount to an unduly suggestive one-person photographic lineup. Hooks also maintains that the district court erroneously instructed the jury that it "must" find him guilty if the state proved the elements of the offense charged; he argues that the instruction directly contradicts the well-settled prerogative of jury nullification, which permits a jury to acquit a defendant regardless of proven guilt. Because an investigating officer does not trigger the due process concerns of an impermissibly suggestive identification procedure when the officer independently obtains and views a state-maintained driver's license photograph to identify a suspect, the district court did not err by refusing to suppress evidence of the identification. And because the district court may instruct the jury of its duty to find a defendant guilty if the defendant committed the crime charged, notwithstanding the jury's inherent power to disregard that duty, the jury instructions were not erroneous. We therefore affirm.

## FACTS

St. Paul police officer Jason Urbanski was working undercover and attempting to arrange a controlled purchase of drugs on October 11, 2005, when a woman entered his car and directed him to drive to Willard's Bar in St. Paul. There, the woman spoke with a man sitting in a parked car. The man then made a u-turn and stopped his car alongside Urbanski's so that the drivers were within reach of each other. The driver told Officer Urbanski that he had a "dub"—the street term for a twenty-dollar-size rock of crystallized "crack" cocaine. Urbanski purchased the "dub" of crack cocaine from the man. The interaction lasted less than one minute, but Urbanski could see the man's face clearly enough to identify him later.

Urbanski reported the car's description and license plate number to other officers in the narcotics unit as the man drove away, and officers stopped the car. One of the officers radioed to Urbanski that the driver's name was Keith Hooks, based on his driver's license.

Urbanski decided to confirm that the man stopped by the officers was the man who had just sold him the cocaine. He returned to the police department and looked up Hooks's driver's license photograph on the Department of Motor Vehicles electronic database. Urbanski viewed the photograph within 20 minutes after the drug purchase. Seeing the photograph satisfied Urbanski that Hooks was the seller.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

The state charged Hooks with third-degree controlled substance crime, Minnesota Statutes section 152.023, subdivision 1(1) (2004). Hooks moved to suppress officer Urbanski's identification testimony on the theory that it resulted from an unfairly suggestive, one-person photographic line-up. At the end of the *Rasmussen* hearing, the district court concluded that it would allow the identification testimony to be heard by the jury. It opined that the single-photo identification process might have been impermissibly suggestive had the witness been an unsworn civilian, but it questioned whether it should analyze the constitutionality of an undercover police officer's identification testimony using the test that applies to the admissibility of civilian eyewitness identification testimony. It went on to analyze the officer's identification procedure under that test, concluding ultimately that the procedure did not violate Hooks's due process rights.

At trial, the jury heard testimony from Urbanski, from two other officers who participated in the undercover operation, and from a forensic scientist from the St. Paul Police Department. Urbanski testified about his purchase of the crack cocaine and his identification of Hooks through the motor vehicle department's database. He also identified Hooks in court. The officers who assisted Urbanski in the undercover operation testified that they stopped Hooks's car and asked to see his driver's license shortly after Urbanski reported the license plate number. One of the officers testified that the driver's license photograph and descriptive information matched the driver, who was Hooks. The forensic scientist testified that a test revealed that the substance purchased by Urbanski was cocaine.

The jury found Hooks guilty of third-degree sale of a controlled substance. This appeal follows.

## ISSUES

I. Did the district court deny Hooks a fair trial by admitting evidence of the undercover police officer's identification testimony?

II. Did the district court contradict the jury's nullification power and commit plain error by instructing the jury that it "must" find Hooks guilty if the state proved all the essential elements of the charged offense beyond a reasonable doubt?

## ANALYSIS

### I

Hooks first argues that the district court erred by failing to suppress Officer Urbanski's identification testimony on the ground that the identification resulted from an impermissibly suggestive procedure, denying him a fair trial. The district court correctly questioned whether the identification procedure here triggers a due process analysis based on whether it was impermissibly suggestive. We hold that because a police officer cannot impermissibly suggest a suspect to himself, Officer Urbanski's identification procedure raises no due process concerns.

Evidentiary decisions generally rest within the discretion of the district court, not to be reversed absent an abuse of discretion. *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003). But despite the district court's general discretion to make evidentiary decisions, we review de novo whether a defendant has been denied due process. *Spann v. State,* 704 N.W.2d 486, 489 (Minn.2005). The United States Constitution guarantees all criminal defendants due process of law. U.S. Const. amend. XIV. The admission of pretrial identification evidence violates due process if the procedure "was so impermissibly

suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *accord State v. Roan*, 532 N.W.2d 563, 572 (Minn.1995). Our threshold question is whether we must analyze the identification under the test established in the suggestive-identification line of cases when the officer who designed the identification procedure is also the witness who made the identification. The answer is no.

■■■ In the typical circumstance in which police provide the lineup options to an eyewitness, we apply a two-part test to determine whether the pretrial identification procedure created a substantial likelihood of irreparable misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 110, 114, 97 S.Ct. 2243, 2251, 2253, 53 L.Ed.2d 140 (1977); *State v. Ostrem*, 535 N.W.2d 916, 921 (Minn.1995). The test is whether the identification procedure was unnecessarily suggestive, and, if so, whether the identification is nonetheless reliable when considered as part of the totality of the circumstances. *Ostrem*, 535 N.W.2d at 921. But this case does not present the typical circumstance. The reason a due process issue arises when a pretrial identification procedure is unnecessarily suggestive in the typical circumstance is that the defendant was unfairly singled out by police for the witness to identify. *Simmons*, 390 U.S. at 383–84, 88 S.Ct. at 971–72; *see also Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969) (holding procedure impermissibly suggestive when in an initial lineup included considerably shorter men than defendant, and victim identified defendant only after a prior one-man viewing). The traditional test is designed to measure whether *police influence* rather than *the witness's own reasoning and recollection* led to the witness's

identification of the defendant. *See State v. Taylor*, 594 N.W.2d 158, 161 (Minn.1999) (stating that the ultimate concern of the unnecessarily-suggestive inquiry is whether the procedure used by police influenced the witness identification of the defendant). The constitutional concern about police-induced identification is not present where, as here, the facts include no conceivable identification-inducing interaction between police and the identifying witness.

Hooks's constitutional challenge overlooks *why* single-person lineups trigger a constitutional concern, so we briefly outline the reasoning behind the concern. It is commonly understood that the police solve crimes, so a witness naturally assumes that the police have unique expertise and information to determine the offender's identity. This confidence in police skill and insight demonstrates itself routinely; when the public learns that police have identified a suspect in some publicized crime, for example, the public, relying only on the perception of police credibility rather than on specific evidence, is generally influenced by the announcement and may tend to prejudge the suspect to be guilty. In some cases, this prejudice from police influence on public perception is so substantial that an affected defendant has the right to have his trial relocated. *See* Minn. R.Crim. P. 25.02, subd. 3 (requiring change of venue when dissemination of potentially prejudicial material creates a reasonable likelihood that a fair trial cannot be had).

■■■ This same prejudicial influence occurs more acutely when an eyewitness learns that police suspect a particular individual. The eyewitness's subsequent identification of the same individual is questionable because of the significant possibility that the identification rests indirectly on the officer's perceived suspicion rather than on the witness's own

direct recollection. And because the reliability of identification evidence is crucial, an eyewitness's tainted identification conflicts with the fundamental fairness required to satisfy due process. *See Roan*, 532 N.W.2d at 572 (stating that admission of identification evidence derived from suggestive identification procedures may violate a defendant's due process rights).

Police need not expressly announce a suspect for the improper suggestion to occur. In the context of eyewitness pretrial identification from police photographic lineups, courts have often concluded that a police officer's showing of too few viable identification options unfairly suggests who the witness should identify. *See Manson v. Brathwaite*, 432 U.S. 98, 104, 97 S.Ct. 2243, 2247–48, 53 L.Ed.2d 140 (1977) (condemning single-photo lineups); *Simmons*, 390 U.S. at 383, 88 S.Ct. at 971 (discouraging use of single photo or photos of several persons among which a single individual appears multiple times or whose image is emphasized); *United States v. Hines*, 387 F.3d 690, 693–94 (8th Cir.2004) (noting that one-person photo lineup was unduly suggestive and analyzing identification under the totality of the circumstances); *Ostrem*, 535 N.W.2d at 921 ("Single photo line-up identification procedures have been widely condemned as unnecessarily suggestive."); *State v. Lindahl*, 309 N.W.2d 763, 765 (Minn.1981) (finding suggestive a photo lineup containing two pictures of defendant); *State v. Witt*, 310 Minn. 211, 212–13, 245 N.W.2d 612, 614–15 (1976) (finding improper suggestion when victim who failed to pick defendant from a photo lineup later picked the defendant in an in-person lineup); *State v. Erickson*, 396 N.W.2d 265, 268 (Minn.App.1986) (finding unduly suggestive a 12–photo lineup with three photos of the defendant), *review denied* (Minn. Dec. 12, 1986).

Recognizing the reasoning that drives the constitutional concern in these cases, we hold that an investigating police officer who obtains and observes *for himself* a driver's license photograph to identify *for himself* the person he observed committing the investigated crime does not implicate that person's due process rights. Unlike the eyewitness to whom a single police-supplied photograph might suggest the photographed person's guilt, Officer Urbanski could not have been unduly influenced by his own identification procedure. Acting as the investigating officer, Urbanski decided for himself which photograph to view to confirm his reasoning that the licensed driver of the car that officers stopped leaving the scene of the crime was the offending drug dealer. The lineup options therefore narrowed to a single photograph based on Urbanski's own reasoning, not based on the influence of an authority whose narrowing would tend to suggest a particular suspect to a witness.

We conclude that this process does not raise any fairness concerns that require the application of our two-part test. The district court therefore did not need to assess the identification for suggestibility under the traditional test, and it did not err by denying Hooks's motion to suppress the identification evidence.

## II

Hooks also contends that he is entitled to a new trial because the district court gave three erroneous jury instructions. The district court gave the challenged instructions at the beginning and end of Hooks's trial. At the start of trial, the district court instructed the jury that if it was left with reasonable doubt as to any essential element, it must find Hooks not guilty. It then instructed the jury that, "[o]n the other hand, if after you've considered all the evidence in the case you have

no reasonable doubt, but rather the State has proved each essential element of the crime beyond a reasonable doubt, then you must find the defendant guilty of such ... crime." And in its final instructions to the jury, the district court stated that the jury "must follow the law as I give it to you whether you agree with it or not, and whether you think the law is or should be different from what I tell you it is."

Hooks did not object to these instructions at trial. We therefore review for plain error, and we will reverse only if we conclude that there is an error, that is plain, and that affects Hooks's substantial rights. *State v. Martinez,* 725 N.W.2d 733, 738 (Minn.2007). District courts have considerable latitude when choosing jury instructions, but the instructions, viewed as a whole, must accurately state the law. *State v. Baird,* 654 N.W.2d 105, 113 (Minn. 2002); *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). We hold that the jury instructions that Hooks challenges are not erroneous.

Hooks argues that the instructions to the jury that it "must" convict if it finds that Hooks's actions meet all elements of the charged crime contradict the jury's nullification power, which allows the jury *not* to convict even if Hooks's actions meet all the elements. Hooks's argument is facially logical, but it is unpersuasive because it fails to account for the unique essence of the power of jury nullification.

Jury nullification, also called jury lenity, is the extraordinary power of the jury to issue a not-guilty verdict even if the law as applied to the proven facts establishes that the defendant is guilty. *State v. Perkins,* 353 N.W.2d 557, 561 (Minn.1984). Jury nullification is a curious paradox: it is the jury's prerogative to disregard the law without actually committing an unlawful offense in doing so; its exercise is literally illegitimate (contrary to

law) but practically legitimate (allowed by law). It is "the physical power to disregard the law" that has been "laid down to [the jury] by the court." *United States v. Battiste,* 24 F. Cas. 1042, 1043 (C.C.Mass. 1835) (Story, J.). In that sense, the most accurate description of the jury's paradoxical authority to act on its own in disregard of the law even while it is charged with following the law is "the raw power to bring in a verdict of acquittal in the teeth of the law and the facts." *Perkins,* 353 N.W.2d at 561.

One paradox begets another. So in the universe of logic in which a true thing cannot simultaneously be a false thing, there have been ripples in reason to accommodate the tension between the jury's lawful duty to follow the law and the jury's unlawful power not to. So, for example, a jury may render obviously inconsistent verdicts by finding a defendant guilty of one offense while acquitting him of another when identical evidence supports both charges alike. *State v. Morris,* 149 Minn. 41, 182 N.W. 721 (1921) (allowing guilty verdict for lesser offense on evidence that would have led to guilty verdict for greater offense for which the jury acquitted the defendant); *see also State v. Holbrook,* 305 Minn. 554, 556, 233 N.W.2d 892, 894–95 (1975) (relying on the jury's power of lenity to rationalize jury's conviction for possessing heroin with the intent to sell while acquitting him for selling heroin). Although issues already decided are generally subject to collateral estoppel, the district court may not dismiss a criminal complaint on grounds of collateral estoppel in favor of a criminal defendant because of the indirect application of the rule of lenity. *State v. Juelfs,* 281 N.W.2d 148, 150 (Minn.1979) ("The reason collateral estoppel does not apply to a case such as this is that one cannot conclude from the verdicts that the jury *necessarily*

found against the state on an issue or issues common to both charges."). And although courts must instruct jurors on the legal framework to guide their decision whether to convict or acquit, it is not required to instruct jurors that they also have the power of lenity allowing them to disregard that legal framework. *Perkins,* 353 N.W.2d at 562. Similarly, district courts are prohibited from directing verdicts for the state even if all the facts point only to guilt. *Id.* at 561 ("Recognition of this power [of jury lenity] also underlies the rule that the trial court may not direct a verdict for the state in a criminal case."). So also, a defendant "is entitled to have all the elements of the offense with which he is charged submitted [to the jury] even if the evidence relating to these elements is uncontradicted." *State v. Carlson,* 268 N.W.2d 553, 560 (Minn.1978).[1]

The nullification paradox is particularly conspicuous when applied to Hooks's contention. He maintains that instructing that the jury "must" convict if the charges are proven conflicts with the possibility that the jury, exercising lenity, *need not* convict. Hooks is right that the instruction conflicts with the power of lenity; he is wrong that the conflict is unacceptable. Indeed, the conflict is unavoidable. The exercise of the power of jury lenity is, by definition, a contradiction or usurpation of the law. So if the district court is prohibited from informing the jury of the law merely for the sake of preserving the rule of lenity, it could give no specific law to guide jury deliberation, and nothing would then remain of the rule of lenity, because the rule depends on the law. All that would remain if there is no law to nullify is a sort of anarchy in which the jury would be free to decide "the law" for itself. Justice Story challenged that idea 173 years ago while declaring the jury's "physical power to disregard the law" in its exercise of lenity: "But I deny, that, in any case, civil or criminal, they have the moral right to decide the law according to their own notions, or pleasure. On the contrary, I hold it the most sacred constitutional right of every party accused of a crime, that the jury should respond as to the facts, and the court as to the law." *Battiste,* 24 F. Cas. at 1043.

To demonstrate just how extreme Hooks's argument really is, one need look no further than the statute that he violated. "A person *is guilty* of controlled substance crime in the third degree if . . . the person unlawfully sells one or more mixtures containing a narcotic drug." Minn. Stat. § 152.023, subd. 1(1) (2004) (emphasis added). If Hooks is correct that the challenged instructions are erroneous, it is also true that even reading the applicable statute to the jury was erroneous since the statute dictates that "a person *is guilty*" for doing what Hooks did.

■■■ The jury instructions did not direct the jury not to exercise its extraordinary power of jury nullification. Because the inherently lawless power of jury nullification exists regardless of whether (and particularly when) a judge orders a jury to convict a defendant if the elements are proven, the district court did not err by instructing the jury that it must find Hooks guilty if the state proved all elements of the crime beyond a reasonable doubt.[2]

1. For a thorough account of the English origins and American development of the rule of jury nullification, see *United States v. Dougherty,* 473 F.2d 1113, 1130–38 (D.C.Cir.1972).

2. Hooks also challenges the jury instruction, "When you reach a verdict it must be agreed upon by all of you," asserting that this requires the jury to reach a verdict. He misconstrues the instruction, which, as a whole, accurately states that the jury's verdict must

## DECISION

The district court properly denied Hooks's motion to suppress identification evidence because the procedure used does not raise the due process concerns associated with impermissibly suggestive identification procedures. The district court did not err by instructing the jury that it must find Hooks guilty if the state proved the essential elements of the charged offense.

**Affirmed.**

be unanimous. *See State v. Hysell*, 449 N.W.2d 741, 744–45 (Minn.App.1990) (affirming instructions informing the jury that a verdict must be unanimous).