*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1676**

State of Minnesota,
Respondent,

vs.

Daniel Edward Nixon,
Appellant.

**Filed October 19, 2015
Affirmed
Kirk, Judge**

Ramsey County District Court
File No. 62-CR-13-5914

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Kirk, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellant challenges his conviction of aiding and abetting third-degree burglary.

Appellant raises two arguments on appeal. First, he argues that the district court erred in

refusing to suppress a bystander's pretrial identification of appellant because the show-up identification procedure was unnecessarily suggestive. Second, appellant argues that the district court erred in admitting the statements of appellant's accomplice during his guilty plea colloquy identifying appellant as the second man involved in the burglary because it violated his right to confrontation and the hearsay rules. We affirm.

## FACTS

At approximately 10:00 a.m. on August 8, 2013, D.H. was preparing to open the pull-tab booth at Skinner's Pub, a restaurant and bar located in St. Paul. A man, later identified as Antonio Jackson, entered the restaurant area and asked D.H. for a takeout menu. Jackson sat at a table and made a phone call on his cell phone. Jackson asked D.H. if the front door to the pub was unlocked, and D.H. replied that the door was locked until 11:00 a.m. when the restaurant opened. D.H. walked over to the patio, located in back of the restaurant, to smoke a cigarette.

As D.H. lit her cigarette, she saw "a blur" running up the basement steps. At the same time, Jackson stood up, turned around, and followed "the blur" out the pub's back door and into the parking lot. At trial, D.H. testified that she was unable to provide a physical description of the "blur."

On the morning in question, a homeowner who resided down the street from the pub was parking his vehicle outside behind his garage. The homeowner saw a man with a cell phone exit the back door of the pub. A short time later, a second man ran out of the back door of the pub and put something into the hands of the man with the cell phone. Both men took off running towards a vehicle parked nearby on the corner of Milton

2

Street and Randolph Avenue. The homeowner observed that the vehicle was a smaller, maroon-colored four-door vehicle that was possibly a Ford Focus. At trial, the homeowner testified that he believed there was something "goofy" about what he had just observed, which prompted him to walk over to the pub and ask the bartender if the pub had been "robbed." The bartender denied that a robbery had occurred, and the homeowner returned home.

M.S. and P.S. own Skinner's Pub. When M.S. learned about the possible robbery, she immediately went down to the office located in the pub's basement. M.S. saw that the office door was open and that money was missing from deposit bags stored in Tupperware containers. A large piece of plywood covering an open-air vent had been moved, exposing a hole large enough for a person to crawl through. M.S. determined that $3,525 in bills and coins was missing. Officers later recovered two shoeprints located on a box directly below the exposed open-air vent.

P.S. reported the burglary to police. St. Paul Police Officers David Quast and Shawn Filiowich responded to the burglary report. During their investigation, they met with the homeowner who observed the men leaving the pub. He provided a description of the suspects' race, size, and dress and the getaway vehicle. The homeowner told Officer Quast that he did not get a good look at the suspects' faces. The officers broadcasted the homeowner's description of the getaway vehicle over the police radio. At a motion hearing, the homeowner testified that he viewed the two men for approximately five to ten seconds from a distance of about 30 yards. The homeowner testified that appellant Daniel Edward Nixon was wearing khaki shorts and a light-

3

colored t-shirt with a design, and that Jackson was wearing a white t-shirt and green shorts.

St. Paul Police Officer Amanda Heu located a maroon-colored vehicle matching the getaway-vehicle description in the alley of Fuller Avenue. Officer Heu saw a man walk out from the garage area and spoke with him. The man provided Officer Heu with the address of the owner-driver of the maroon-colored vehicle and stated that he often saw a black male accompany the owner-driver of the vehicle. Officers Quast and Filiowich drove to the owner-driver's residence. They observed Jackson walk out of the front door of the residence wearing a white t-shirt and green shorts, matching the physical description provided by the homeowner. Jackson briefly walked down the sidewalk, noticed the officers sitting in the squad vehicle, and immediately walked back inside the residence.

When officers knocked on the front door of the residence, Jackson answered the door dressed in different clothing. Jackson informed the officers of his identity, that he was the owner of the residence, and that his "partner" was in the house. Shortly thereafter, appellant approached the officers at the front door. At trial, St. Paul Police Officer Heather Teff testified that both men were "very sweaty." When one of the officers asked appellant what he and Jackson had been doing that morning, appellant replied that they had been exercising. An officer observed scratches and white powder consistent with dry-wall dust on appellant's hands and arms.

Appellant and Jackson were arrested for probable cause of committing a burglary and placed in the back of separate squad vehicles for the show-up. Both men were

4

removed one at a time from the squad vehicle, and presented to the homeowner and D.H., separately, without handcuffs or restraints in a public street with officers nearby. The homeowner positively identified both suspects as the men that he saw leaving the pub on the morning in question. While identifying appellant during the show-up, the homeowner told a police officer, "Yeah, I thought he had a white shirt, but the rest of him looks a lot like the guy." D.H. positively identified Jackson, but did not positively identify appellant. At both the motion hearing and trial, the homeowner consistently testified that he never got a good look at the facial features of either suspect. He also did not identify appellant at trial as one of the suspects.

On August 12, appellant was charged with aiding and abetting third-degree burglary, and he pleaded not guilty. Appellant moved to suppress the homeowner's pretrial identification, arguing that the show-up procedure violated his constitutional rights and was impermissibly suggestive. The district court held a two-day motion hearing, at which the homeowner testified. On February 21, the district court denied appellant's motion, concluding that the pretrial identification was not impermissibly suggestive and the evidence was reliable. The district court also denied appellant's motion for reconsideration.

A four-day jury trial was held in May 2014. Jackson was named as a state's witness and was subpoenaed to testify at appellant's trial. Despite being subpoenaed and signing a recognizance promising to appear, Jackson failed to appear at trial, and the state was unsuccessful in locating him. The district court issued a warrant requesting Jackson's arrest and that he be held pending appearance at trial. On the last day of trial,

Jackson's whereabouts remained unknown. In a separate proceeding, Jackson pleaded guilty to aiding and abetting third-degree burglary without a plea deal and with no advance knowledge of his criminal sentence. At appellant's trial, the district court allowed the prosecutor to read into evidence the transcript of Jackson's guilty-plea colloquy where he admitted that he and appellant committed the burglary. Citing the forfeiture-by-wrongdoing doctrine, the district court also read into evidence several letters written by appellant threatening Jackson's safety if he testified at appellant's trial.

Appellant represented himself at trial, with the assistance of stand-by counsel. He did not testify at trial. The jury convicted appellant of aiding and abetting burglary in the third degree. Appellant was sentenced to 24 months in prison.

This appeal follows.

**DECISION**

**I.      The district court did not err in admitting the homeowner's pretrial identification.**

The admission of pretrial-identification evidence violates a defendant's right to due process if the procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State v. Booker*, 770 N.W.2d 161, 168 (Minn. App. 2009) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968)). This court reviews de novo whether the district court's admission of pretrial identification evidence denied a defendant due process. *State v. Hooks*, 752 N.W.2d 79, 83 (Minn. App. 2008). We review the district court's evidentiary rulings for an abuse of discretion, and we will not reverse a district court's findings unless those findings are clearly erroneous. *State v. Byers*, 570 N.W.2d 487, 491 (Minn. 1997).

6

We apply a two-part test to determine whether a pretrial identification is admissible evidence. *State v. Taylor*, 594 N.W.2d 158, 161 (Minn. 1999). The first prong of the test is whether the procedure "was unnecessarily suggestive." *In re Welfare of M.E.M.*, 674 N.W.2d 208, 214-15 (Minn. App. 2004) (citations omitted). But under the second prong of the test, even unnecessarily suggestive show-up evidence is reliable if "the totality of the circumstances shows the witness' identification has adequate independent origin." *State v. Ostrem*, 535 N.W.2d 916, 921 (Minn. 1995). Courts consider five factors when determining whether the identification evidence is reliable: (1) the witness's opportunity to see the suspect when the crime occurred; (2) the witness's degree of attention to the suspect; (3) the accuracy of the witness's prior description of the suspect; (4) the witness's certainty about the identification when confronted with the suspect; and (5) the amount of time between the crime and the confrontation. *State v. Adkins*, 706 N.W.2d 59, 62-63 (Minn. App. 2005).

Appellant argues that the show-up was unnecessarily suggestive because: (1) he was selected from the general population based on the homeowner's general description; (2) the officers told the homeowner that he was being transported to view two suspects in custody; and (3) the officers stated that they had found the "stuff" stolen in the burglary.

We conclude that the show-up was not unnecessarily suggestive. "While a one-person show-up is by its very nature suggestive," it is not "unnecessarily suggestive per se." *Taylor*, 594 N.W.2d at 161-62. Here, appellant was not singled out from the general population based solely upon a witness description or improperly presented for viewing by the officers at the show-up. *Id.* at 162. The police singled out appellant for the show-

7

up based on several factors. Officer Heu linked the homeowner's description of the suspects' getaway vehicle to the suspects' residence. Officers saw Jackson exit the residence wearing clothes matching the description provided by the homeowner. When officers made contact with appellant, whom Jackson described as his "partner" at the residence, they noticed that both men were extremely sweaty and appellant had drywall dust and scratches on his hands and forearms. This is strong evidence of appellant's alleged participation in the recent burglary of the pub.

At the motion hearing, the homeowner testified that when Officer Quast told him that they had two people in custody, the homeowner assumed that they had committed the burglary. The homeowner also testified that while he was seated inside the squad vehicle during the show-up, an officer told him that they had "found the stuff in the car that he took from Skinner's." But Officer Quast testified that he never made the alleged statement, and pointed out that when the homeowner participated in the show-up, officers could not have recovered any stolen items from the getaway vehicle because a search warrant for the vehicle had not yet been executed. A review of the squad video supports the officer's version of events.

Moreover, even if the identification procedure was unduly suggestive, the homeowner's identification had an adequate independent origin under the totality of the circumstances. Supporting the district court's determination of reliability, the record demonstrates that (1) the homeowner had an unobstructed view of the men; (2) his attention was focused on their movements to such an extent that he walked over to the pub and asked the bartender if the pub had been robbed; (3) the homeowner gave a

8

relatively accurate description as the squad video shows appellant to be a black male wearing a light-colored blue t-shirt and light-colored shorts; (4) the homeowner appeared fairly certain in his identification of appellant; and (5) only approximately two hours had elapsed between the alleged burglary and the show-up. While the homeowner was unable to identify appellant at trial, his show-up identification was reliable at the time it was made.

## II. The district court did not err in admitting Jackson's testimony during appellant's trial.

Under the Confrontation Clause of the Sixth Amendment to the United States Constitution, a defendant in a criminal case has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also* Minn. Const. art. I, § 6. Generally, the Confrontation Clause bars the admission of a witness's out-of-court testimonial statement unless the witness is unavailable and was previously subject to cross examination by the defendant. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004); *State v. Cox*, 779 N.W.2d 844, 850 (Minn. 2010). One narrow exception to the Confrontation Clause is the forfeiture-by-wrongdoing doctrine, which "extinguishes confrontation claims on essentially equitable grounds." *Cox*, 779 N.W.2d at 850.

The forfeiture-by-wrongdoing doctrine requires the state to prove: (1) that the declarant-witness is unavailable, (2) that the defendant engaged in wrongful conduct, (3) that the wrongful conduct procured the unavailability of the witness, and (4) that the defendant intended to procure the unavailability of the witness. *Id.* at 851. This court considers whether the district court's admission of evidence violated the defendant's

9

Confrontation Clause rights de novo. *State v. Caulfield*, 722 N.W.2d 304, 308 (Minn. 2006).

Appellant argues that the state failed to prove the first three elements of the forfeiture-by-wrongdoing doctrine. We disagree.

Under the Confrontation Clause, a witness is not unavailable "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Cox*, 779 N.W.2d at 852 (quotation omitted). Relevant factors for determining the unavailability of a witness include the lengths to which the state went to procure the witness, whether the witness responded to the state's subpoena, and whether the state called the witness at trial. *Id.* The state must prove the unavailability of a witness by a preponderance of the evidence. *Id.*

Here, a preponderance of the evidence supports the district court's determination that Jackson was unavailable for trial. The state made numerous attempts to contact Jackson by phone and at his residence. The district court also issued a warrant for Jackson's arrest. Jackson never responded to the state's subpoena to appear for the rescheduled trial dates, although he had responded to an earlier subpoena on May 5. On May 5, Jackson appeared at a pretrial hearing and informed the prosecutor that he "had no intention of testifying" and that he "intended to take the [F]ifth [Amendment]." While appellant argues that Jackson did not have the right to take the Fifth Amendment because he was not appealing his conviction, it is reasonable to infer that Jackson, who likely is not knowledgeable about the subtleties of Fifth Amendment protections, meant that he would not testify in appellant's upcoming trial.

10

The record also establishes that Jackson and appellant had exchanged a series of letters through the mail in the fall and winter of 2014, and that appellant threatened Jackson about testifying at appellant's upcoming trial. A defendant's intimidation of a witness constitutes wrongful conduct that allows other competent evidence to take the place of the witness's testimony. *See State v. Black*, 291 N.W.2d 208, 214 (Minn. 1980) (affirming the district court's finding that the defendant forfeited his right to confront the victim when she refused to testify because he intimidated her into silence), *abrogation on other grounds recognized by State v. Jones*, 556 N.W.2d 903, 909 n.4 (Minn. 1996). A police officer met with Jackson in December 2014 to discuss threatening letters written by appellant and addressed to Jackson that jail staff had discovered in appellant's jail cell. Jackson informed the officer that he was scared of appellant's family and what could happen to him if he testified against appellant at the trial. The district court made a proper common-sense inference that appellant's letters to Jackson were the driving force behind Jackson's absence from appellant's trial. Hence, the district court properly determined that appellant forfeited his right to confront Jackson at trial through his own wrongful conduct.

Moreover, the district court did not err in admitting portions of Jackson's guilty plea under the "declarations against penal interest" exception for unavailable witnesses under Minn. R. Evid. 804(b)(3). *See State v. Gatson*, 801 N.W.2d 134, 150-51 (Minn. 2011). Here, Jackson was unavailable to testify. *See id.* At an omnibus hearing, Jackson pleaded guilty to aiding and abetting third-degree burglary without the benefit of a plea deal or any advance knowledge of what his sentence might be. *Id.* Jackson's

11

statements subjected him to criminal liability for the burglary, as he admitted that on August 9, 2013, appellant accompanied him to Skinner's Pub and that they intended to burglarize the pub. *Id.* Jackson admitted to "thr[owing] a screen" to divert attention away from appellant, who took the money from the office in the pub's basement. Jackson admitted that the burglary was successful and that he left with money from the pub that did not belong to him. The statement was wholly inculpatory because it indicated that Jackson participated in the burglary with appellant and he subjected himself to criminal liability equally with appellant. *See State v. Morales*, 788 N.W.2d 737, 764-766 (Minn. 2010); *see also State v. Usee*, 800 N.W.2d 192, 199 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011). There was no reason for Jackson to make these statements unless he believed that they were true, and the record supports Jackson's testimony. For these reasons, Jackson's testimony is admissible under Minn. R. Evid. 804(b)(3).

**Affirmed.**

12