**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44843**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2018 Opinion No. 21 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: May 4, 2018 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| TANYA ANDREA VARGAS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge; Hon. Michael J. Oths, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate, affirming magistrate's denial of motion in limine, <u>affirmed</u>.

Barnum Howell & Gunn PLLC, Boise, for appellant. Matthew Gunn argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

---

HUSKEY, Judge

Tanya Andrea Vargas appeals from the district court's decision affirming the magistrate's denial of Vargas's motion in limine, which sought suppression of the officer's out-of-court and in-court identification of Vargas. Vargas contends that the magistrate and district court erred in concluding that an officer's identification of a suspect does not raise due process concerns--and therefore does not require the court to employ the two-step reliability test for identifications made pursuant to suggestive identification procedures--if the identification stems from a photograph obtained as part of that officer's investigation. Vargas further argues that the magistrate and district court erred in failing to suppress the officer's in-court identification, as it was the result of a tainted out-of-court identification. For the following reasons, we affirm the district court's decision.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 10:50 p.m. on May 8, 2015, an officer noticed that a vehicle had a nonfunctioning taillight and began to follow the vehicle. After calling the vehicle's license plate number into dispatch, the officer attempted to stop the vehicle. The driver slowed but did not stop. The officer, who pulled to within fifteen feet of the vehicle, was able to observe the driver's face in the driver's side mirror, as the driver kept glancing into the mirror. After the officer activated her siren, the driver accelerated rapidly. The officer, pursuant to department policy, did not give chase.

The license plate number led the officer to the registered owner of the vehicle. The registered owner told the officer that the owner had provided the vehicle to Vargas. After obtaining Vargas's photograph from a copy of her state-issued ID, the officer was able to identify Vargas as the driver of the vehicle.

On June 5, 2015, Vargas was charged with one count of eluding a police officer. Vargas pled not guilty. Before trial, Vargas filed a motion in limine seeking suppression of the officer's identification of Vargas, both in and out of court. The magistrate denied the motion. On March 15, 2016, the case proceeded to trial and a jury found Vargas guilty. The magistrate sentenced Vargas to 166 days in jail, but credited her with 166 days served. Vargas timely appealed the judgment of conviction to the district court. The district court affirmed the judgment of conviction, holding that the magistrate did not err in denying Vargas's motion in limine. Vargas timely appealed the district court's decision.

# II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.* Thus, the appellate courts do not review the

decision of the magistrate. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id*.

III.

ANALYSIS

**A.    Out-of-Court Identification**

To determine whether evidence of an out-of-court identification violates due process, this Court applies a two-step test. *See State v. Hoisington*, 104 Idaho 153, 162, 657 P.2d 17, 26 (1983). First, the defendant must establish that the identification procedure was overly suggestive. *United States v. Wade*, 388 U.S. 218, 240 n.31 (1967); *Hoisington*, 104 Idaho at 162, 657 P.2d at 26. Second, if the defendant meets that burden, courts consider whether the identification was nonetheless reliable under the totality of the circumstances. *Id.* This second step entails considering the witness's opportunity to view the perpetrator, his degree of attention, the accuracy of his description, his level of certainty, and the time between the crime and pretrial confrontation, and then weighing those factors against the "corrupting effect of the suggestive identification." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Hoisington*, 104 Idaho at 162, 657 P.2d at 26. Thus, greater indicia of reliability may be necessary the more egregious the suggestive procedures.

However, the preliminary issue for this Court is whether the identification stemmed from police suggestiveness. *State v. Almaraz*, 154 Idaho 584, 593, 301 P.3d 242, 251 (2013) (focusing on whether the suggestive procedures leading to the identification stemmed from police action); *State v. Trevino*, 132 Idaho 888, 892, 980 P.2d 552, 556 (1999) ("Due process requires the exclusion of identification evidence if police suggestiveness created a substantial risk of mistaken identification."). The United States Supreme Court reaffirmed the existence of this preliminary hurdle in *Perry v. New Hampshire*, 556 U.S. 228, 232-33 (2012). In *Perry*, the Court explained:

> We have not extended pretrial screening for reliability to cases in which the suggestive circumstances were not arranged by law enforcement officers. . . . Our decisions . . . turn on the presence of state action and aim to deter police from rigging identification procedures, for example, at a lineup, showup, or photograph array. When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups,

3

vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.

*Id.* Accordingly, the question that the parties and lower courts in the present case focused on was whether the officer's actions created suggestive circumstances leading to an unreliable identification, with Vargas's trial counsel asserting that the officer was impermissibly suggestive toward herself. The magistrate and district court both rejected that argument.

The district court, in rejecting Vargas's argument, relied on *State v. Hooks*, 752 N.W.2d 79 (Minn. Ct. App. 2008). In *Hooks*, an undercover officer completed a controlled purchase of narcotics. The officer and the dealer were in separate cars that were pulled up alongside one another; the drivers were in reach of one another, and the transaction lasted less than one minute. After other officers stopped the dealer's car and obtained his license, they radioed his name to the undercover officer. Within twenty minutes of the controlled purchase, the undercover officer reviewed Hooks' driver's license photo, identifying him as the dealer. Rejecting Hooks' argument that the officer's identification was influenced by impermissibly subjective identification procedures, the Minnesota Court of Appeals reasoned that an officer cannot be unduly influenced by his own identification procedure. *Id.* at 85. Other states have reached the same conclusion. *See State v. Manna*, 539 A.2d 284, 312 (N.H. 1988) ("Officer Casale could not be found through the photo identification process to have impermissibly suggested *to himself* the [identity of the suspect]."); *see also Terry v. State*, 857 N.E.2d 396, 409 (Ind. Ct. App. 2006) ("[W]hen a police officer who is both an investigator and a witness views a single photograph in order to verify a suspect's identity, the identification procedure is not unduly suggestive."). This conclusion is logical because the purpose behind scrutinizing police identification procedures is to prevent witnesses from being prejudiced by suggestive police tactics and by their own assumptions that the police have unique expertise and information to determine the suspect's identity. *Hooks*, 752 N.W.2d at 84-85.

On appeal, Vargas contends that the two-step reliability test applies whether or not the identification is made by law enforcement or a lay witness. In support of that contention, Vargas cites to *Brathwaite*. We agree that, pursuant to *Manson*, the two-step reliability test should be applied where one officer presents a single photograph lineup to *another* officer. But those are not the facts in the present case. Here, the officer presented herself with the photograph. Accordingly, there was no need to analyze the officer's identification procedures under the two-

4

step reliability test. *See Manna*, 539 A.2d at 312 ("[*Manson*] is clearly distinguishable from this case because the suggestive photo identification procedure was employed by a second regular officer.").

Vargas further misstates the rationale in *Hooks* as being that a law enforcement officer cannot be "impermissibly and unnecessarily swayed by a single-photo lineup." This is an incorrect reading of *Hooks*. *Hooks* holds that a law enforcement officer cannot impermissibly suggest something *to himself*. Accordingly, the following cases, which Vargas cites to show how other jurisdictions have rejected the rationale in *Hooks*, are distinguishable on the basis that they deal with situations in which the officer was presented with a photograph by *another* officer: *United States v. Lumpkin*, 192 F.3d 280, 284 (2d Cir. 1999) (applying *Manson* test when a detective displayed a single photograph to two undercover officers); *Butcher v. State*, 931 A.2d 1006, at *2 (Del. 2006) (applying *Manson* test when detective identified suspect after being provided a "confirmatory photo" upon returning to the police station); and *State v. Abdo*, 518 N.W.2d 223, 225 (S.D. 1994) (applying *Manson* test when one officer showed a single photograph of the defendant, along with three photographs that the identifying officer had already said were not the suspect, to the identifying officer).

The only case that Vargas cites to that directly contradicts the reasoning in *Hooks*, *Manna*, and *Terry* is *State v. Padgett*, 2000 WL 873218 (Ohio Ct. App. June 30, 2000), which appears to be an outlier. In *Padgett*, the Ohio Court of Appeals held that an officer, who obtained a photograph of a suspect by running his fingerprints and then pulling a booking photograph, had undertaken an identification procedure that was impermissibly suggestive toward himself. *Id.* It is noteworthy that the court in *Padgett* did not discuss the rationale behind *Manson*: the need to protect defendants from improper police conduct, such as rigging a photograph array or lineup, and the sheer influence an authority figure can have over an identifying witness. *See Perry*, 556 U.S. at 232-33. This could be due to the fact that *Padgett* was written in 2000, while *Perry*, *Almaraz*, *Hooks*, and *Manna* were all handed down after 2000.

The cursory reasoning in *Padgett* is not as persuasive as the reasoning in *Hooks*, *Manna*, and *Terry*, nor does it comport with the focus on improper police action found in *Perry* and *Almaraz*. Accordingly, the magistrate and district court were correct in determining that an officer's identification of a suspect pursuant to a photograph discovered as part of that officer's

5

investigation--as opposed to a photograph provided by another officer--does not raise due process concerns, thus obviating any need to employ the two-step reliability test.[1]

**B.      In-Court Identification**

The due process test for suppression of an in-court identification that is allegedly tainted by an impermissibly suggestive out-of-court identification is whether the out-of-court identification was so suggestive that there is a very substantial likelihood of misidentification. *State v. Crawford*, 99 Idaho 87, 103, 577 P.2d 1135, 1151 (1978).  Because we hold that the out-of-court identification could not have been impermissibly suggestive as a matter of law, Vargas's in-court identification argument necessarily fails.

**IV.**

**CONCLUSION**

The lower courts were correct in concluding that the out-of-court identification did not raise due process concerns, as the officer in this case could not have impermissibly suggested to herself the identity of the suspect.  Accordingly, the district court's decision is affirmed.

Judge Gutierrez and Judge Pro Tem Walters, **CONCUR**.

---

[1]      If the reliability of an officer's identification is questionable based on factual circumstances such as lighting and distance, as opposed to impermissible police suggestion, the correct procedure for challenging the identification is not pretrial screening under *Manson*, but rather vigorous cross-examination, invocation of applicable rules of evidence, and the proposal of jury instructions addressing the fallibility of eyewitness identification.  *See Perry v. New Hampshire*, 556 U.S. 228, 232-33 (2012).