## STATE v. WILLIE TURNER.

239 N. W. 2d 468.

February 27, 1976—No. 45552.

---

*Thomson, Wylde, Nordby & Friedberg, John R. Wylde, Jr.,* and *Joseph S. Friedberg,* for appellant.

*Warren Spannaus,* Attorney General, *Gary W. Flakne,* County Attorney, and *Michael McGlennen, David W. Larson,* and *Vernon E. Bergstrom,* Assistant County Attorneys, for respondent.

Heard before Otis, Scott, and Amdahl, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is an appeal from a conviction for the offense of unlawful possession of heroin, a Schedule I narcotic controlled substance. We affirm.

At approximately 2:50 a.m. on October 31, 1973, two Minneapolis police officers stopped a car at the intersection of 24th Street and Nicollet Avenue. They had observed the car traveling south on Nicollet with its lights out, weaving back and forth across the centerline. Defendant, Willie Turner, was the only occupant of the vehicle. One of the officers asked defendant for his driver's license, and he replied that he did not have it with him. He then got out of the car and placed a package of fried chicken on the roof. The officer asked defendant to accompany

him to the squad car, and placed him in the back seat. When asked for his name, defendant gave the name "Clarence Turner." The officer made a radio check and determined that there was no driver's license issued to a Clarence Turner. He then placed defendant under arrest for driving without a valid Minnesota driver's license and driving at night without headlights.

Because defendant was to be taken to the courthouse to be jailed, the officers impounded the vehicle and called for a tow truck to take it to a lot. While waiting for the arrival of the tow truck, one of the officers inventoried the automobile, completing a standard property inventory sheet. In the unlocked console between the two front seats, the officer discovered a bag of marijuana. Upon discovering this, the officer returned to the squad car and placed defendant under arrest for possession of narcotics.

The tow truck arrived, and both officers went to talk to the truck driver, leaving defendant alone in the squad car. About a minute later, one of the officers returned to the squad car and observed defendant emptying some powder from a tinfoil packet onto the floor of the car. The officers removed defendant, searched him, and recovered a second tinfoil packet which contained a brownish powder. The powder turned out to contain heroin.

The prosecution did not introduce the marijuana as part of its case in chief. On direct examination by defense counsel, Mrs. Turner testified:

"Q. Now, have you ever seen your husband possessing any heroin or using any heroin?

"A. My husband doesn't use anything, no."

On cross-examination, she testified:

"Q. Mrs. Turner, you said your husband doesn't use anything. What do you mean by 'anything'?

"A. What do I mean by 'anything'?

"Q. When he asked you if you've ever known your husband to use heroin, you said he doesn't use anything.

"A. He mentioned the needles and anything, is what I meant.

"Q. You just meant narcotics, you don't mean liquor?

"A. Uh-huh."

Defendant testified on direct examination:

"Q. To your knowledge, did you have any possession of heroin or control of heroin under your control at any time?

"A. I don't mess with it and I didn't have it.

"Q. And on that night that you were stopped, on October 31, did you have possession of heroin at that point—

"A. No, I did not.

"Q. —or control of it at all?

"A. I didn't have nothing but chicken."

On cross-examination he testified:

"Q. Your wife says you don't use anything except alcohol. Is that true, too?

"A. I drink, yes.

"Q. Is that all?

"A. That's all. I smoke.

"Q. Smoke cigarettes?

"A. Viceroy's and Kool's.

"Q. You smoke Viceroy's and—

"A. Viceroy's and Kool's.

"Q. Viceroy's and what?

"A. Viceroy's and Kool's.

"Q. And the only thing you ever use in the nature of a stimulant or drug is alcohol, is that right?

"A. Right."

After these exchanges, the prosecution introduced the marijuana in order to impeach defendant's testimony.

Defendant makes two arguments: First, that the marijuana was the fruit of an illegal search. Second, that it was improperly introduced for impeachment.

■ Defendant's first claim is foreclosed by our recent decision in City of St. Paul v. Myles, 298 Minn. 298, 218 N. W. 2d 697

(1974). In that case we held that evidence obtained as a result of a routine inventory of an impounded automobile is not the fruit of an illegal search when the driver and occupants have been arrested and are being taken to jail.[1]

■ Defendant's second claim is more compelling. He argues that the marijuana, as evidence of a separate crime, was improperly introduced for impeachment purposes. The state responds, citing State v. Fulford, 290 Minn. 236, 187 N. W. 2d 270 (1971), that the marijuana was properly introduced to impeach defendant's testimony that all he had with him in his car was chicken, and that the only stimulant he used was alcohol.

In State v. Flowers, 262 Minn. 164, 114 N. W. 2d 78, 79 (1962), we were presented with the following episode:

"On the direct examination of defendant, his counsel elicited the following testimony:

" 'Q. Did you ever kick or strike Darwin Morrow on the evening of March 26th?

" 'A. No, I haven't kicked, struck, Darwin Morrow on March 26th. As a matter of fact, I have never kicked or struck, kicked no man, period.' "

The prosecutor seized on this statement to put defendant's character in issue, and on cross-examination he asked:

" 'Q. Mr. Flowers, on Friday night, March 25th, 1960, didn't

---

[1] See, also, Cady v. Dombrowski, 413 U. S. 433, 93 S. Ct. 2523, 37 L. ed. 2d 706 (1973); A. L. I., Model Code of Pre-arraignment Procedure (Proposed Official Draft, 1975) § SS 230.6(3).

We also note that the transcript of the Rasmussen hearing reveals no defense motion to suppress the marijuana, and the transcript of the trial reveals no objection on Fourth Amendment grounds until after the prosecutor had completed her closing argument. The only defense objection at the time the evidence was introduced was on grounds of relevance. Failure to move to suppress at the Rasmussen hearing, and failure to object on Fourth Amendment grounds at trial results in a waiver of the objection. State v. Walker, 306 Minn. 105, 235 N. W. 2d 810 (1975); State v. Trueman, 303 Minn. 426, 227 N. W. 2d 824 (1975); State ex rel. Rasmussen v. Tahash, 272 Minn. 539, 141 N. W. 2d 3 (1965).

you take and break a broom handle over the back of Alice Smith?

" 'A. Sir, am I on trial for Alice Smith or Darwin Morrow?' "

We held (262 Minn. 170, 114 N. W. 2d 82):

"It is obvious from a reading of the record that defendant is an uneducated person, given to the use of colorful and emphatic language common to persons of his background. As we pointed out in the Nelson case [State v. Nelson, 148 Minn. 285, 181 N. W. 850 (1921)], a sweeping denial of the defendant's propensities to fight cannot under any circumstances be used by the prosecution as an invitation to put defendant's character in issue by introducing specific acts of misconduct under the guise of impeachment."

In the case at bar, both defendant and his wife were questioned about his use of heroin. Her statement, "My husband doesn't use anything, no," and his statement, "I didn't have nothing but chicken," were both made in response to questions concerning his use or possession of heroin. As such, they were of the same nature as the "sweeping denial" made in Flowers. Such denials must be viewed in the context in which they were made—in this case in response to questions about defendant's heroin usage. They do not justify the subsequent cross-examination concerning defendant's smoking habits and the eventual admission into evidence of the marijuana. See, State v. Martin, 297 Minn. 359, 211 N. W. 2d 765 (1973). The issue of marijuana was not brought up on direct examination. Defendant's "emphatic language" cannot be taken out of context and used to justify the introduction of evidence of another crime as "impeachment."

■ While the marijuana was not proper impeachment evidence, its introduction does not require reversal of defendant's conviction. In Flowers the defendant's general character was placed in issue when totally unrelated incidents of assault were raised in an attempt "to suggest to the jury that anyone brutal enough to beat a woman should be punished for that offense if not for this." 262 Minn. 168, 114 N. W. 2d 80. Also, there was

no indication that Flowers had ever committed the other assaults —the prosecutor's questions were accusatory and unsupported by any evidence. 262 Minn. 165, 114 N. W. 2d 79. In the case at bar, defendant's general character was not put in issue. The marijuana was closely connected with the heroin charge for which defendant was prosecuted. It was legally seized and found in his possession at the same time the heroin was found.[2] On these facts, its introduction does not require a new trial.[3]

Affirmed.

---

[2] While the issue was not raised by the parties, the marijuana may well have been admissible as part of the same offense or as evidence of an offense connected in time, place, and manner to the offense charged. State v. Klotter, 274 Minn. 58, 142 N. W. 2d 568 (1966).

[3] State v. Hyleck, 286 Minn. 126, 139, 175 N. W. 2d 163, 171 (1970), certiorari denied, 399 U. S. 932, 90 S. Ct. 2267, 26 L. ed. 2d 803 (1970).