STATE of Minnesota, Respondent,

v.

Edwin R. PERKINS, Appellant.

No. C5–82–1634.

Supreme Court of Minnesota.

Aug. 24, 1984.

C. Paul Jones, Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Henn. County Atty., Vernon E. Bergstrom, Rick Osborne, Michael Richardson, Beverly Wolfe, Asst. County Attys., Minneapolis, for respondent.

PETERSON, Justice.

Defendant was found guilty by a district court jury of a charge of assault in the second degree, Minn.Stat. § 609.222 (1982) (assault with a dangerous weapon), for threatening to kill a person with a handgun. Since this was defendant's second offense in which he used a firearm, he was subject, under section 609.11, subd. 5, to a minimum term of 5 years in prison, 5 years also being the statutory maximum under section 609.222. The trial court sentenced defendant to 5 years in prison. The court stated that since the statutory maximum was 5 years, it could not impose the Guidelines term of 90 months normally imposed when there is a 5-year minimum term, but the court made it clear that under the circumstances defendant would not be entitled to receive the normal credit for good behavior. Thereafter, while this appeal was pending, the trial court, in response to a request by the Sentencing Guidelines Commission, amended the sentence to "a 90-month commitment to the Commissioner of Corrections, *nunc pro tunc.*" On appeal defendant does not claim that the evidence of his guilt was insufficient but contends that he was denied a fair trial by (a) the trial court's denial of his motion to suppress a gun on Fourth Amendment grounds, (b) the trial court's denial of his motion to suppress a statement he made before a *Miranda* warning was given, (c) the trial court's refusal to bar the state from using his prior conviction to impeach his credibility when he testified and the trial court's permitting the state to go beyond the fact of conviction and question him about some of the details of the conduct on which the conviction was based, (d) the trial court's refusal to give an instruction informing the jury of its power of lenity, and (e) the trial court's failure to specifically instruct the jury that the burden of proof on the issue of self defense was on the state. Defendant also claims that the trial court erred in amending the sentence and he requests that the sentence be reduced from 90 months to 60 months.

This prosecution arose from an incident on the morning of September 25, 1981, when defendant, without provocation or justification, pointed a loaded handgun at an employee of the city paving department, who was working near defendant's residence, and threatened to kill him. Police, who were immediately called to the scene, told defendant to come out of his residence, to which he had retreated. When defendant came out, one of the officers noticed a bulge in his jacket. The officer reached in and removed the object, which was a box for blank checks, inside of which was a loaded .25 caliber automatic handgun. When one of the officers asked defendant if he had pointed the gun at anyone, defendant said no, that a man had asked him out and that he had come out. The officers then placed defendant under arrest and gave him a *Miranda* warning. Because defendant asked for an attorney, the trial court suppressed a subsequent statement obtained from defendant during an interrogation of him in an interview room at the jail. The court refused to suppress the gun or the statement given at the scene before defendant was placed under arrest.

At trial defendant testified notwithstanding the denial of his motion to bar use of a 1968 conviction of first-degree heat-of-passion manslaughter to impeach his credibility. Defendant claimed that he threatened the victim only when it appeared that the victim was going to throw a rock at him. He denied pointing the gun at the victim or intending to harm or frighten him. In fact, he stated on direct examination, "I made sure not to point a pistol or a weapon in my

life at anybody ever." Defense counsel, obviously referring to the prior conviction—evidence of which had not yet been elicited—asked defendant, "Could there be any exception at some time past when you might have pointed a pistol at someone?" Defendant replied, "I've never pointed a pistol at someone." Defense counsel then asked, "Okay. Was there any occurrence in 1968 that you would care to tell us about?" Defendant said that he would not because it was "irrelative" and said he would not care to tell about it if the prosecutor asked either. Defense counsel asked, "Okay. But if you were asked by the prosecutor and the court asked you to tell us, then would you tell us about it?" Defendant replied, "The court has records of what happened." Defense counsel then asked, "Okay, Mr. Perkins. Have you ever sought to threaten anyone with a gun?" Defendant replied that he had not.

On cross-examination the prosecutor elicited an admission by defendant that he pleaded guilty on June 12, 1968, to first-degree manslaughter. Asked if he pointed a gun, fired it, and killed someone in the incident, defendant said yes but that "I have never pointed a gun at someone unless I intended to use it." On redirect, defendant said that he had learned his lesson in 1968 and that he had not been involved in any violent physical contact since then. He also stated that he had pleaded guilty in 1968 pursuant to a deal because he could not prove his innocence; he implied that he did not plead guilty this time because he was innocent. On recross-examination, the prosecutor asked defendant if in fact there was any deal in 1968, and defendant admitted that there had not been. The state then offered and the court admitted, over objection, a copy of the indictment and of the judgment of conviction. On redirect, defendant stated that the 1968 killing, of his wife, occurred in the heat-of-passion in a gun duel with a man armed with a handgun.

1. Defendant makes a number of distinct arguments in support of his contention that he should be given a new trial.

■ (a) First, defendant argues that the trial court erred in refusing to suppress the gun. This issue is meritless. Police were justified in wanting to talk with defendant and were justified in believing that he might be armed, particularly when they saw a bulge in his jacket. The limited pre-arrest protective frisk was clearly justified.

■ (b) Defendant next argues that the trial court erred in refusing to suppress the statement he made at the scene of his arrest in response to *Miranda*-less interrogation. *Miranda* generally does not apply to temporary investigative detentions. *In Re the Welfare of M.A.*, 310 N.W.2d 699, 700 (Minn.1981). Whether or not police should have given defendant a *Miranda* warning before they asked him if he pointed the gun at anyone depends on whether he was under arrest or was being deprived of his freedom of action in a significant way (*i.e.*, in some way not involved in a brief temporary detention). *State v. Palm*, 299 N.W.2d 740, 741 (Minn.1980). Arguably, once he was frisked and the gun seized, defendant might reasonably have believed that he was going to be arrested and that he was not merely being temporarily detained. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). We are not dealing with an incriminating statement by defendant, however, so any error clearly was not prejudicial. Presumably defendant would have testified anyhow, and the statement would have been admitted for impeachment purposes as a prior inconsistent statement. If defendant had not testified, the statement clearly would not have significantly helped to convict him.

■ (c) Defendant next complains about the trial court's refusal to bar use of his prior conviction to impeach his credibility and about the court's allowing the prosecutor to go beyond the fact of conviction and question him about the conduct underlying the prior conviction. The court's refusal to bar use of the prior conviction is supported by numerous decisions of this court, particularly *State v. Upton*, 306 N.W.2d 117, 118

(Minn.1981) (allowing use of a third-degree murder conviction to impeach the credibility of a defendant charged with assault with a dangerous weapon). Defendant's prior conviction, although in 1968, was clearly not stale, since the sentence for it did not expire until 1978. Minn.R.Evid. 609.

■■■ Normally the prosecutor, in using a defendant's prior conviction to impeach his credibility, may inquire only about the name of the crime and the time and place of conviction. *State v. West,* 285 Minn. 188, 196, 173 N.W.2d 468, 473 (1969), 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 609(03) (1982). Normally, also, a sweeping denial of wrongdoing by a defendant does not justify admission of evidence of a separate crime. *State v. Turner,* 307 Minn. 284, 289, 239 N.W.2d 468, 471 (1976). However, in this case we believe that the repeated denial by defendant, in response to questions by his own counsel, that he had ever pointed a gun at anyone "opened the door" to the limited inquiry by the prosecutor on cross-examination into the circumstances of the prior offense. Indeed, defense counsel did not even object when the prosecutor elicited the evidence that defendant fired a gun in the 1968 incident. Defense counsel did object when the prosecutor offered the indictment and the judgment paper, but those documents did not add anything to what the jury already knew.

(d) Defendant next challenges the trial court's refusal to specifically instruct on the doctrine of jury nullification.

■■■ It is clear that the jury in a criminal case has the power of lenity—that is, the power to bring in a verdict of not guilty despite the law and the facts. It is also true that a recognition of this power underlies a number of doctrines or rules of law. For example, recognition of this power underlies our ruling in *State v. Juelfs,* 270 N.W.2d 873 (Minn.1978) (defendant found guilty of one count of a two count

complaint is not entitled to a new trial or dismissal simply because the jury found him not guilty of the other count, even if the guilty and not guilty verdicts may be said to be logically inconsistent; jury may have believed the defendant guilty of both offenses, but, in the exercise of its power of lenity, could have found defendant guilty of only one of the two counts).[1] Recognition of this power also underlies the rule that the trial court may not direct a verdict for the state in a criminal case and may not instruct the jury that any of the elements of the offense have been proven beyond a reasonable doubt, absent a judicial admission by the defendant of any of the elements. *State v. Carlson,* 268 N.W.2d 553, 560 (Minn.1978). A recognition of the power also underlies the refusal of courts to allow use by criminal defendants of the doctrine of nonmutual collateral estoppel. *See,* in addition to *Standefer v. United States,* 447 U.S. 10, 22–23, 100 S.Ct. 1999, 2007–2008, 64 L.Ed.2d 689 (1980), *State v. Cegon,* 309 N.W.2d 313, 314 (Minn. 1981).

It nonetheless remains true that the power to acquit despite the law and the facts is not a right of juries but something which results from a number of things including the right of a criminal defendant to have a jury trial, the rule prohibiting postverdict inquiry into the thought processes of jurors, and the rules against appellate review of verdicts of acquittal.

■■■ Certain things follow logically from the fact that the jury necessarily has this power of lenity—*e.g.,* the rule of the previously-cited *Juelfs* case. Other things do not follow logically from a recognition of this power. Thus, that a jury has the raw power to bring in a verdict of acquittal in the teeth of the law and the facts does not mean that the defendant has a right to have all lesser offenses submitted. A defendant has a right to have lesser offenses submitted only if they are included of-

---

**1.** For a second appeal in the same case involving basically the same issue, *see State v. Juelfs,*

281 N.W.2d 148 (Minn.1979).

fenses and only if the evidence would rationally permit a verdict of guilty of the lesser offense and not guilty of the charged offense. *State v. Carlson*, 268 N.W.2d 553, 560 (Minn.1978).

We do not believe that the constitution mandates an instruction in a criminal case which would encourage the jury to acquit for impermissible reasons—that is, an instruction which informed the jury of its raw power of lenity. In *Sparf v. United States*, 156 U.S. 51, 102, 15 S.Ct. 273, 293, 39 L.Ed. 343 (1895), the United States Supreme Court held that in criminal cases in the federal courts the trial court should not instruct the jury that it had a right to bring in a verdict of acquittal in the teeth of the law and the facts. Many federal courts have held that the trial court in criminal cases should not give such an instruction. An example is *United States v. Dougherty*, 473 F.2d 1113, 1136–37 (D.C. Cir.1972), the first of the modern cases to discuss the issue at length. And *see, United States v. Wiley*, 503 F.2d 106, 107 (8th Cir.1974). It has also been held that the trial court may bar a defense attorney from arguing "jury nullification." *United States v. Brown*, 548 F.2d 204, 210 (7th Cir.1977). Finding these and other authorities persuasive, we hold that the trial court did not err in refusing the requested instruction.

(e) Defendant's final claim of trial error relates to the trial court's inadvertent failure to state in its instructions that the state has the burden of proving that a defendant did not act in self defense. We agree with defendant that the trial court should have given such an instruction. We believe, however, that the trial court's inadvertent failure to so instruct was not prejudicial. *State v. Kutchara*, 350 N.W.2d 924 (Minn.1984); *State v. King*, 287 N.W.2d 636, 637 (Minn.1979). Here, as in both of those cases, the trial court's instructions did state that a defendant is not required to prove anything and that the burden of

proof is on the state. Further, defendant's claim of self defense was a weak one. In fact, it is arguable that even if the jury had accepted defendant's testimony it would have found him guilty.

2. Defendant's only other contention relates to the sentence. The state apparently was not notified of the request by the Sentencing Guidelines Commission until after the court amended the sentence. The state concedes that the court could not impose a greater sentence than 5 years, given the fact that the statutory maximum is 5 years. In other words, the state concedes that the trial court originally handled the matter correctly. We therefore reduce defendant's sentence to 5 years or 60 months.[2]

---

2. As a result of a recent change in the law, a defendant now may earn good time off a minimum term sentence. The change is being given retroactive effect by the Sentencing Guidelines Commission. Minn.Rules of Court—Desk Copy 266, 268–269 (West 1984).