RODENBERG, Judge
In this direct appeal from his conviction of and sentence for first-degree manslaughter, appellant David Stay argues that the district court reversibly erred when it instructed the jury that first-degree manslaughter does not require proof that death or great bodily harm be reasonably foreseeable if the underlying offense is a fifth-degree assault, and that it further erred by accepting inconsistent verdicts finding appellant guilty of fifth-degree assault and first-degree manslaughter but not guilty of first-degree assault. We affirm.
FACTS
On May 13, 2016, appellant spent most of the evening drinking, socializing, and playing various games at a restaurant and bar. D.T. was also at that bar and, by the time the bar closed at 1:00 a.m., D.T. had an alcohol concentration of at least 0.21.
Around 1:00 a.m., appellant was outside the bar. He yelled and became aggressive toward A.B., a friend of D.T. A.B. entered the bar to report appellant's aggression to the bartenders. D.T. came out of the bar and began poking, pushing, and yelling at appellant. After several pushes and pokes by D.T., appellant punched D.T. once in the face.[1] D.T. fell to the ground in an unresponsive state with agonal breathing (a type of breathing when an individual is not receiving oxygen and is very close to death or needing help breathing). Appellant fled.
D.T. was transported by ambulance to a nearby emergency room and later air-lifted to another hospital. Despite medical efforts, D.T. died at 3:56 a.m. A neurologist reported that, in her expert opinion, D.T. died "due to a combination of blunt *358 force craniocerebral trauma... potentiated by alcohol concussion syndrome." In ordinary language, D.T.'s brain was injured by blunt force trauma in such a manner, likely exacerbated by his elevated blood alcohol concentration, that it was unable to transmit the signals necessary for D.T.'s heart and lungs to function, and he died as a result.
After the assault but before D.T. died, police located appellant near his fishing cabin. Appellant initially admitted that he had punched D.T. in the face and that he "coulda made a better choice there's no doubt about it." After D.T. died, appellant was interviewed a second time by a police detective, and appellant described having "retaliated" against D.T.'s pushing and that "it was an over like too hard of a punch for the situation."
Appellant was initially charged with first-degree assault, first-degree-manslaughter, and fifth-degree-assault, and the case was tried to a jury.[2] At trial, appellant emphasized that he did not intend to kill D.T. and that it was unforeseeable that D.T. would die from one punch.
Appellant requested that the district court instruct the jury that first-degree manslaughter requires that death or great bodily harm be reasonably foreseeable as a result of fifth-degree assault as a predicate offense. After hearing arguments concerning the elements of first-degree manslaughter with fifth-degree assault as a predicate offense, the district court declined to include foreseeability of death or great bodily harm as an element. In its instructions to the jury on the elements of first-degree manslaughter, the district court instructed the jury as follows:
Count 1, Manslaughter in the First Degree-While Committing Assault in the Fifth Degree-Defined. Under Minnesota law, whoever, in committing assault in the fifth degree, causes the death of another is guilty of manslaughter in the first degree.
The elements of manslaughter in the first degree are: First, the death of [D.T.] must be proven. Second, the [appellant] caused the death of [D.T.]
Third, the death of [D.T.] was caused by [appellant] committing an assault in the fifth degree.
....
It is not necessary for the State to prove any intent on the part of [appellant] to kill anyone. Fourth, [appellant's] act took place on, or about May 13 through 14, 2016, in Mille Lacs County.[3]
The jury found appellant guilty of first-degree manslaughter and fifth-degree assault, but found him not guilty of first-degree assault. The district court sentenced appellant to 51 months in prison for first-degree manslaughter and did not sentence appellant for fifth-degree assault.
This appeal followed.
ISSUES
I. Did the district court err by not including the reasonable foreseeability of death or great bodily harm as an element of first-degree manslaughter in the jury instructions?
*359 II. Did the district court err by accepting inconsistent verdicts, a not-guilty verdict on first-degree assault and guilty verdicts on fifth-degree assault and first-degree manslaughter?
ANALYSIS
I. The district court's first-degree manslaughter jury instructions were not erroneous.
Minn. Stat. § 609.20(2) provides that a person commits first-degree manslaughter if that person
violates section 609.224 and causes the death of another or causes the death of another in committing or attempting to commit a misdemeanor or gross misdemeanor offense with such force and violence that death of or great bodily harm to any person was reasonably foreseeable , and murder in the first or second degree was not committed thereby.
Minn. Stat. § 609.20(2) (emphasis added). Fifth-degree assault, ordinarily a misdemeanor,[4] is committed whenever a person "(1) commits an act with intent to cause fear in another of immediate bodily harm or death; or (2) intentionally inflicts or attempts to inflict bodily harm upon another." Minn. Stat. § 609.224, subd. 1.
The parties agree that section 609.20(2) identifies two ways that first-degree manslaughter may be committed. What we will call the "fifth-degree-assault clause" identifies one way, and what we will call the "misdemeanor-offense clause" identifies a second way to commit first-degree manslaughter. The issue before us concerns what the words "with such force and violence that death of or great bodily harm to any person was reasonably foreseeable" modify. We will call this the "reasonable-foreseeability modifier." The case comes down to this: Does the reasonable-foreseeability modifier apply to both the fifth-degree-assault clause and the misdemeanor-offense clause, or does it apply only to the latter?
Before instructing the jury, the district court wrestled with this question in discussions with counsel. The district court observed:
I think when I was originally looking at this and thought the reasonable foreseeability prong belonged in there, it was sort of in like what [defense trial counsel] is saying the history of my understanding of what manslaughter was. The problem is I don't actually even think that the statute is ambiguous now that I've read it multiple times.
I think the statute is pretty straight forward, if it had meant that I was supposed to include, "reasonable foreseeability" there will be ... commas after the, and causes the death of another, "comma" or causes the death of another in committing or attempting to commit a misdemeanor or gross misdemeanor offense, "comma" with such force or violence, and then we would know by the plain reading of the statute that the with force or violence in reasonable foreseeability applied to both. They ... do not have that punctuation in there.
The district court went on to explain that its interpretation that the reasonable-foreseeability modifier does not apply to the fifth-degree assault clause is consistent with the pattern jury instruction. Over appellant's objection, the district court did not include the reasonable-foreseeability modifier when it instructed the jury.
Appellate courts review the interpretation of a statute de novo.
*360 State v. Riggs , 865 N.W.2d 679, 682 (Minn. 2015). An appellate court must first determine whether a statute's language is ambiguous. State v. Thonesavanh , 904 N.W.2d 432, 435 (Minn. 2017). "A statute is ambiguous when its language is subject to more than one reasonable interpretation." Riggs , 865 N.W.2d at 682. In interpreting a statute, statutory "words and phrases are construed according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08(1) (2018). If the court determines that the statute is not ambiguous, the statute's plain meaning controls. Dupey v. State , 868 N.W.2d 36, 39 (Minn. 2015).
Both parties argue that section 609.20(2) is unambiguous. Appellant argues that the reasonable-foreseeability modifier unambiguously applies to both the fifth-degree-assault clause and the misdemeanor-offense clause. The state contends that the reasonable-foreseeability modifier unambiguously applies only to the misdemeanor-offense clause. The parties do not contest the meaning of any word in the statute. They disagree about how the words relate to one another. We, therefore, must turn to rules of grammar to interpret the statute.
Appellant contends that Minn. Stat. § 609.20(2)"unambiguously requires foreseeability," because the statute sets out two ways to commit first-degree manslaughter (the fifth-degree-assault clause and the misdemeanor-offense clause), those two ways are not separated by a comma, and both are immediately followed by a single modifier (the reasonable-foreseeability modifier). Appellant argues that "the omission of a comma before the foreseeability modifier strongly suggests that it applies to both groups" and argues that the proper rule for us to apply is the series-qualifier rule.
The series-qualifier rule provides that "when several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." In re Estate of Pawlik , 845 N.W.2d 249, 252 (Minn. App. 2014) (quotation omitted), review denied (Minn. June 25, 2014). If the series-qualifier rule is applied to Minn. Stat. § 609.20(2), the reasonable-foreseeability modifier following the misdemeanor-offense clause would modify both the misdemeanor-offense clause and the fifth-degree-assault clause. Under appellant's proposed interpretation, the district court should have instructed the jury that the elements of first-degree manslaughter include that appellant committed the predicate fifth-degree assault with such force and violence that death or great bodily harm was reasonably foreseeable.
In contrast, the state argues that the "first two clauses [of section 609.20(2) ] are separated by a disjunctive conjunction (the word 'or') which indicates they are the alternative factual bases," while only the "second and third clauses are separated by a comma, which indicates that what follows the comma applies to the entire provision." The state also notes the "different ordering of internal elements [namely, offense and amount of force] between the fifth-degree-assault clause and the misdemeanor-offense clause" is different, such that attaching the reasonable-foreseeability modifier to the fifth-degree-assault clause would mean such a sentence "does not connect the degree of force to the predicate offense because of the interposed causation element." The state argues that the correct rule to apply is either the last-antecedent rule or nearest-reasonable-referent rule.
*361 Under the last-antecedent rule, a limiting phrase "ordinarily modifies only the noun or phrase that it immediately follows." Larson v. State , 790 N.W.2d 700, 705 (Minn. 2010). Applying this rule, the reasonable-foreseeability modifier would only modify the misdemeanor-offense clause, not the fifth-degree-assault clause.
The nearest-reasonable-referent rule has a similar impact. "Under this grammatical rule, which closely resembles the last-antecedent rule and is often confused with it when the syntax of a sentence involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent." State v. Pakhnyuk , 906 N.W.2d 571, 577-78 (Minn. App. 2018) (quotation omitted), review granted (Mar. 20, 2018). The nearest reasonable referent is the misdemeanor-offense clause. Accordingly, the state argues that the district court's jury instructions concerning the elements of first-degree manslaughter were correct.
Appellant disagrees and cites to our decision in Pawlik . We determined there that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series," the series-qualifier rule applies. Pawlik , 845 N.W.2d at 252 (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) ). Pawlik noted that "[t]he series-qualifier canon may be applicable where the text of a statute is a flowing sentence that lacks any distinct separations; is unbroken by numbers, letters, or bullets; and is not written in a divided grammatical structure demonstrated by double-dashes opening a list or semicolons separating each listed noun." Id. (quotations omitted). The Minnesota Supreme Court has provided guidance regarding whether to apply the series-qualifier or the last-antecedent rule, explaining that a court should not apply the last-antecedent rule if doing so would render any of the statute's language superfluous or if elements are separated by a semicolon or line break. In re Estate of Butler , 803 N.W.2d 393, 397-98 (Minn. 2011) ; see also City of Oronoco v. Fitzpatrick Real Estate, LLC , 883 N.W.2d 592, 595 (Minn. 2016) (explaining that a "semicolon or a line break might signify that a ... clause modifies all that goes before," but the absence of either signal indicates otherwise).
We conclude that the series-qualifier rule does not apply here. The first two clauses of section 609.20(2) do not present a "parallel construction that involves all nouns and verbs in a series." Pawlik , 845 N.W.2d at 252 (quotation omitted). In Pawlik , the series-qualifier rule applied to the following sentence: " 'Interested person' includes heirs, devisees, children, spouses, creditors, beneficiaries and any others having a property right in or claim against the estate of a decedent, ward or protected person which may be affected by the proceeding." Id. at 251 (quotation omitted). In other words, the court determined that the phrase "having a property right in or claim against the estate of a decedent" modified each of the preceding nouns. What the modifier affected in Pawlik was a parallel series comprised of only nouns. Id.
In contrast, the fifth-degree-assault and misdemeanor-offense clauses here are not parallel constructions and are not comprised of only nouns. See Minn. Stat. § 609.20(2). First, the order of causation is reversed as between the fifth-degree-assault clause and the misdemeanor-offense clause; the clauses are therefore not parallel constructions. Id. Second, the misdemeanor-offense clause includes not only nouns and verbs, but also an article ("a"), a conjunction ("or"), and an adverb ("attempting to commit"). Id. Third, there is a *362 disjunctive "or" separating the two clauses. See Pakhnyuk , 906 N.W.2d at 577-78. The language at issue in Pawlik had no disjunctive "or." Pawlik , 845 N.W.2d at 251.
Finally, applying the last-antecedent or the nearest-reasonable-referent rule to Minn. Stat. § 609.20(2) is consistent with the Minnesota Supreme Court's rule from Butler , because applying the reasonable-foreseeability modifier to only the misdemeanor-offense clause does not render any part of section 609.20(2) superfluous. Butler , 803 N.W.2d at 398. Appellant's proposed interpretation renders the fifth-degree-assault clause superfluous. It would be redundant for the legislature to have specifically enumerated an offense (fifth-degree assault) which is necessarily included in the misdemeanor-offense clause. See Minn. Stat. § 609.224 (2014).[5]
Although the wording of Minn. Stat. § 609.20(2) is awkward, which caused the district court some initial difficulty parsing its meaning, awkward is not the same as ambiguous. We conclude that either the last-antecedent or the nearest-reasonable-referent rule is the proper grammatical rule to apply here. Using either, the proper interpretation is that the legislature provided two ways to commit first-degree manslaughter, only the latter of which includes the element that death or great bodily harm was reasonably foreseeable.
Even if we were to conclude that Minn. Stat. § 609.20(2) is ambiguous, we would still arrive at the same conclusion.
"Every law shall be construed, if possible, to give effect to all its provisions." Minn. Stat. § 645.16 (2018) ; see also Minn. Stat. § 645.17(2) (2018) (establishing the presumption that the Minnesota Legislature intends all portions of a statute to be "effective and certain"). If a statute's language is ambiguous, we may look beyond the plain language of the statute to attempt to ascertain the legislature's intent. Dupey , 868 N.W.2d at 40. One method we may use to determine the intention of the legislature is "the contemporaneous legislative history," Minn. Stat. § 645.16(7), which "may include events leading up to the introduction of the act, the history of the act's passage, and any modifications made during the course of the bill's passage," Haage v. Steies , 555 N.W.2d 7, 9 (Minn. App. 1996).
Before 1996, section 609.20(2) read, in relevant part, that first-degree manslaughter is committed whenever a person:
(2) causes the death of another in committing or attempting to commit a misdemeanor or gross misdemeanor offense with such force and violence that death of or great bodily harm to any person was reasonably foreseeable, and murder in the first or second degree was not committed thereby.
Minn. Stat. § 609.20(2) (Supp. 1995). The legislature amended the statute in 1996 to add the language "violates section 609.224 and causes the death of another or" (the fifth-degree-assault clause).
The legislative history confirms that the 1996 amendment, contrary to appellant's assertions, was intended to create a "per se manslaughter rule." The language "violates section 609.224 and causes the death of another or" was added in 1996 as part of *363 an omnibus criminal-justice bill. 1996 Minn. Laws ch. 408, art. 3, sec. 13, at 365. The language in the amendment originated in the Minnesota Senate, S.F. 2714 (1996), concerning which the senate committee on crime prevention heard testimony from citizens, a police officer, and an Assistant Hennepin County Attorney. Hearing on S.F. No. 2714 Before the S. Comm. on Crime Prevention (Feb. 7, 1996).
The testimony before the senate committee concerned a 1995 case where a man was killed after being punched in the head; the man fell and hit his head on the pavement. Id. In that case, a grand jury declined to indict the person who threw the punch for either first-degree assault or first-degree manslaughter, as then defined. Id. According to the assistant county attorney, the grand jury apparently believed that the first-degree-assault charge, which required great bodily harm, did not apply if the victim had actually died; and it apparently believed that the manslaughter charge under the then-current statute, which required death or great bodily harm to be reasonably foreseeable, did not apply because the victim's death had been unforeseeable. Id.
The assistant county attorney explained to the senate committee that the "reasonably foreseeable" language works well for misdemeanors other than assault. Id. The purpose of the proposed amendment was to close a gap in the law and to define first-degree manslaughter in such a way as to apply when a perpetrator assaults someone who dies as a result, even if the victim's death was not reasonably foreseeable. Id. One senator argued against the amendment, contending that the outcome in the 1995 Hennepin County case resulted more from prosecutorial missteps than from any "gap" in the law. Id. However, despite this expressed reservation, the amendment was approved by the committee. Id. The amendment was signed into law by Governor Arne H. Carlson on April 2, 1996, after the bill containing it was passed by the senate and the house of representatives. The amendment became effective on August 1, 1996.
The 1996 amendment expressly anticipated cases like this one, where a single punch, amounting to a fifth-degree assault, unexpectedly results in a death.
In determining the legislature's intent, courts are to presume that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable." Minn. Stat. § 645.17(1) (2018). Appellant argues that we should apply this canon of avoiding absurd results by considering a hypothetical scenario where a person grabs a victim's crotch, the victim is startled, steps into traffic, and dies. Appellant argues that, because this death would be unforeseeable, the groper could not be subject to prosecution for first-degree manslaughter; but, had the groper instead committed a fifth-degree assault and the same result followed, first-degree manslaughter would have been committed. This, appellant argues, would be an absurd result.
Leaving aside for the moment the possibility that the hypothesized groping might also be charged under the fifth-degree-assault clause of the first-degree-manslaughter statute, see Minn. Stat. § 609.224, subd. 1(2) (stating that whoever "intentionally inflicts or attempts to inflict bodily harm upon another" is guilty of fifth-degree assault), there is a more fundamental problem with this argument. It is not the judiciary's province to decide what level of punishment ought to apply to particular acts or offenses; that is uniquely a legislative function. See State v. Ali , 855 N.W.2d 235, 268-69 (Minn. 2014) ; State v. Olson , 325 N.W.2d 13, 17-18 (Minn. 1982) ;
*364 State v. Osterloh , 275 N.W.2d 578, 580 (Minn. 1978). We must apply the law as it is and as the legislature intended, regardless of whether we think it is a good idea. See Axelberg v. Comm'r of Pub. Safety , 848 N.W.2d 206, 212 (Minn. 2014) (stating that courts are to read statutes "as they are, not as some argue they should be"). We cannot say that the legislature's application of the reasonable-foreseeability modifier to the misdemeanor-offense clause, but not to the fifth-degree-assault clause, creates an absurdity in section 609.20(2).
Next, appellant contends that comparison of the various subsections of Minn. Stat. § 609.20 requires interpreting subsection (2) as not requiring foreseeability. Appellant argues that, because the other subsections of section 609.20 each list only one way to commit first-degree manslaughter, appellant's interpretation is correct because it "renders subpart two like the other four subparts of the statute." Appellant further argues that we "should accept interpretations of statutes that make them structurally consistent and avoid interpretations that do not." This has some superficial merit. But it is not for us to elevate the "style" of subsection (2) over its plain language or over the evident legislative intent.
Finally, appellant contends that we should apply the canon of lenity to arrive at his proposed interpretation of the statute. The canon of lenity requires a court, struggling with an ambiguous statute, to resolve that ambiguity in favor of the defendant. State v. Nelson , 842 N.W.2d 433, 444 (Minn. 2014). The canon of lenity is a canon that only applies as a last resort when, after exhausting other means of interpretation, the statute is still hopelessly ambiguous. See Thonesavanh , 904 N.W.2d at 439-41 (explaining that this canon is not, however, a "grand canon that towers over all the others and allows a defendant to prevail in every instance in which a criminal statute is ambiguous"). Here, this canon is inapplicable because, as analyzed in the above sections, the statute is not ambiguous at all-much less hopelessly so. And we are able to discern the legislature's intent regardless of any ambiguity that might be found.
The district court correctly determined that Minn. Stat. § 609.20(2) does not include an element of reasonable foreseeability when the predicate offense is fifth-degree assault. Accordingly, it properly instructed the jury.
II. The district court did not err by accepting a not-guilty verdict on first-degree assault and guilty verdicts on fifth-degree assault and first-degree manslaughter.
Appellant argues that the district court committed reversible error by accepting a perverse jury verdict that found appellant not guilty of first-degree-assault, but guilty of first-degree-manslaughter and fifth-degree-assault. Appellant argues that "there is a substantial likelihood the jury inaccurately applied the law," having potentially engaged in " 'automatic guilt' reasoning."
Here, after the jury began its deliberations, it asked the district court, "If you are guilty on count III, do you have to be guilty on count I?" The district court, on the record and after consulting with counsel in appellant's presence, instructed the jury that it "should consider each offense, and evidence pertaining to it, separately. The fact that you may find defendant guilty or not guilty as to one of the charges should not control your verdict as to any other offense." Appellant's trial counsel agreed to this instruction, and appellant makes no argument on appeal that *365 it was erroneous. He challenges the verdicts as legally inconsistent.
"A defendant is entitled to a new trial only if the verdict is legally inconsistent, as opposed to merely logically inconsistent." State v. Christensen , 901 N.W.2d 648, 651 (Minn. App. 2017). A defendant may be found guilty on one count, while simultaneously acquitted on another count, which may be logically inconsistent, so long as the verdicts are not legally inconsistent. State v. Laine , 715 N.W.2d 425, 435 (Minn. 2006) ; State v. Leake , 699 N.W.2d 312, 326 (Minn. 2005). To be legally inconsistent, a defendant must be convicted on two (or more) offenses, and "proof of the elements of one offense negates a necessary element of another offense." State v. Cole , 542 N.W.2d 43, 51-52 (Minn. 1996). Whether a jury's verdicts are legally inconsistent is a question of law, subject to de novo appellate review. Leake , 699 N.W.2d at 325.
The Minnesota Supreme Court has held that a jury "returned legally inconsistent verdicts in finding defendant guilty of first degree premeditated murder and second degree manslaughter." State v. Moore , 458 N.W.2d 90, 94 (Minn. 1990). The verdicts in that case were legally inconsistent because, in order to find Moore guilty of first-degree murder, the jury had to have found that Moore "acted with premeditation and intent to kill," whereas the second-degree manslaughter conviction required Moore to have caused the death "by culpable negligence." Id . at 93-94. The supreme court was "unable to reconcile the jury's findings that defendant caused the death of his wife with premeditation and intent and at the same time caused that death through negligence or reckless conduct." Id. at 94.
The Minnesota Supreme Court has explained that logically inconsistent verdicts do not entitle a defendant to a new trial, and that it has "reversed convictions based upon legal inconsistency only in cases involving multiple guilty verdicts that are inconsistent with one another, not in cases of alleged conflict between guilty and not-guilty verdicts." State v. Bahtuoh , 840 N.W.2d 804, 821 (Minn. 2013). Here, nothing about the jury's several verdicts negates a necessary element of first-degree assault.[6] Appellate courts generally do not engage in "postverdict inquiry into the thought processes of jurors." State v. Perkins , 353 N.W.2d 557, 561 (Minn. 1984).
Appellant argues that there is "a substantial likelihood the jury inaccurately applied the law." Appellant relies on the death penalty case Mills v. Maryland to support his contention that the jury applied the law inaccurately. 486 U.S. 367, 381, 108 S.Ct. 1860, 1868, 100 L.Ed.2d 384 (1988). In that case, however, based on the existing record , the Supreme Court was concerned that "there is at least a substantial risk that the jury was misinformed" about the applicable law regarding the determination of mitigating circumstances at the sentencing phase. Id. The district court's jury instructions here were not erroneous. We decline to probe why, and how, the jury reached its verdict.
DECISION
Under the plain language of Minn. Stat. § 609.20(2), when a defendant is charged with first-degree manslaughter with the *366 predicate offense of fifth-degree assault, the elements of that crime do not include the reasonable foreseeability of causing death or great bodily harm. The district court properly instructed the jury on the elements of first-degree manslaughter. The district court did not err in accepting the jury's verdicts.
Affirmed.

Appellant testified at trial. His version of events is that he was standing outside the bar when D.T. unexpectedly became aggressive. According to appellant, D.T. appeared outside and suddenly began poking him, pushing him backwards, and yelling profanities at him. Appellant testified that he did not know why D.T. was confronting him and that he punched him once in self-defense. We accept and view the facts in the light most favorable to the verdict reached by the jury.

The state added and dismissed counts before trial, but the charges actually tried were first-degree assault in violation of Minn. Stat. § 609.221, subd. 1 (2014), first-degree manslaughter in violation of Minn. Stat. § 609.20(2), and fifth-degree assault in violation of Minn. Stat. § 609.224, subd. 1 (2014). We cite to the 2014 statutes which were in effect at the time the alleged offenses occurred. Section 609.20 remains unchanged since 2014.

These instructions conform with the pattern jury instructions in 10 Minnesota Practice , CRIMJIG 11.45, .46 (2015).

If additional elements not present in this case are proved, fifth-degree assault may constitute a gross misdemeanor or felony. See Minn. Stat. § 609.224, subds. 2, 4 (2014).

As discussed below, appellant also argues separately that, should we determine that Minn. Stat. § 609.20(2) is ambiguous, his interpretation is correct. And even if we were to determine the statute is ambiguous, which we do not, we note that it would make little sense for the legislature to separate fifth-degree assault and its elements from the misdemeanor-offense clause when fifth-degree assault is a misdemeanor offense. Under appellant's proposed construction, the 1996 amendment is functionally meaningless. That cannot have been the legislature's intent.

One possibility here is that this jury may have determined that appellant was not guilty of first-degree assault because the result was not great bodily harm, but death. If so, this case would be an exemplar of the legislature's purpose in amending section 609.20(2) in 1996.